NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LINDA BUCKANAGA,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2024-1335

---

Petition for review of the Merit Systems Protection Board in No. CH-0752-22-0366-I-1.

---

Decided:  November 5, 2024

---

KEVIN CURTIS CRAYON, II, Crayon Law Firm, LLC, Kennesaw, GA, for petitioner.

DEANNA SCHABACKER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

---

Before DYK, CHEN, and STOLL, *Circuit Judges*.

PER CURIAM.

Linda Buckanaga seeks review of the Final Order of the Merit Systems Protection Board sustaining the Initial Decision of the Administrative Judge dismissing Ms. Buckanaga's involuntary disability retirement appeal for lack of jurisdiction.  Ms. Buckanaga claims that multiple incidents during her employment created a hostile work environment and led to her involuntary resignation. Because the Administrative Judge did not consider the totality of the circumstances and weighed evidence at the non-frivolous allegations stage of the proceeding, we vacate the decisions from the Board and the Administrative Judge and remand for further proceedings consistent with this opinion.

## BACKGROUND

Ms. Buckanaga was a Supervisory Health Systems Specialist at the Indian Health Services' (IHS) White Earth Health Center (WEHC).  Ms. Buckanaga, who has bipolar disorder, applied for disability retirement on November 15, 2019.  She alleges that her retirement was involuntary due to a hostile work environment, which left her "overwhelmed and stressed from her work conditions, as well as distraught" over several incidents she had with management between October 2017 and her retirement.[1] J.A. 10.

I

The following facts are taken from Ms. Buckanaga's allegations in her response to a show cause order on jurisdiction issued during the proceedings before the Board, or from the Administrative Judge's recitation of the

---

[1]    It is unclear from the record the exact date Ms. Buckanaga officially retired from her position with IHS.

facts in the Initial Decision. In October 2017, Ms. Buckanaga informed Laura DeGroat—the Deputy Health Systems Administrator with IHS at WEHC and Ms. Buckanaga's first-line supervisor—that a member of her staff had requested medical leave for two weeks and she had approved it. Ms. DeGroat requested the medical note supporting the leave request and googled the provider to confirm the request was legitimate. Ms. Buckanaga felt "that Ms. DeGroat's actions demeaned her and undermined her decision-making authority." J.A. 459.

In January 2018, Ms. Buckanaga emailed Richard Gerry, who was the Acting Bemidji Area Director with IHS, to report that Ms. DeGroat "was behaving inappropriately and unprofessionally with her and talking down to her." J.A. 462. Ms. Buckanaga also complained about Ms. DeGroat's behavior to Daniel Frye, who was the Chief Executive Officer of WEHC and Ms. DeGroat's supervisor. No action was taken pertaining to Ms. Buckanaga's complaints.

In May 2018, Ms. DeGroat was upset with certain management decisions Ms. Buckanaga made, and she went to Ms. Buckanaga's office to suggest that Ms. Buckanaga make changes in the Business Office. When Ms. Buckanaga informed Ms. DeGroat that her suggested changes would not work, "Ms. DeGroat became 'agitated and hostile,' yelling at her and making demands," after which Ms. DeGroat left the office, slamming the door behind her. J.A. 459. During this incident, Ms. Buckanaga alleged that Ms. DeGroat was "so loud and hostile" that "one of the members of [Ms. Buckanaga's] staff, Marissa Stevens, was afraid and wanted to call security because she was afraid Ms. DeGroat was going to assault [Ms. Buckanaga]," that Ms. Buckanaga herself felt threatened, and that she and her staff were badly shaken by the incident. J.A. 459; J.A. 463.

In November 2018, the Office of the Inspector General (OIG) sent a representative to investigate allegations against Ms. DeGroat that Ms. Buckanaga and other staff members had made. When the investigator arrived to interview Ms. Buckanaga, Mr. Frye told him to leave the premises, after which the investigation was reassigned to Ms. DeGroat's friend and former co-worker. The resulting investigation found no issues with the facility. Ms. Buckanaga contacted the OIG to challenge these findings, at which point she learned that the OIG was unaware that its representative had been turned away. After this incident, Ms. Buckanaga alleged that "she felt she had no recourse." J.A. 466.

In January 2019, Ms. Buckanaga reported to Ms. DeGroat that she was subjected to hostility by David French, who was an Information Technology Manager. Ms. DeGroat took no action in response to this complaint.

In March 2019, Ms. Buckanaga took two-weeks leave for her mental health. During this time, she alleges that Ms. DeGroat went into another department and loudly announced either that "[Ms.] Buckanaga is out on mental health leave because she can't handle her staff" or that "[Ms.] Buckanaga is having a mental breakdown and can't handle her staff. She's going to be out for two weeks." J.A. 17; J.A. 475 (emphasis removed). Also, during this leave period, Ms. DeGroat required Ms. Buckanaga to return to work to attend a training, and Ms. Buckanaga was not aware of anyone else being required to return from leave to do so.

In September and October 2019, Ms. DeGroat denied Ms. Buckanaga training and meetings with two service units she reported to as a manager.

In October 2019, Ms. DeGroat yelled at Ms. Buckanaga during a discussion about an employee's grade increase.

And more generally, Ms. Buckanaga alleged that Ms. DeGroat kept her away from managerial meetings. Ms. DeGroat also implemented changes in the Business Office without Ms. Buckanaga's knowledge or participation. For example, Ms. Buckanaga stated that her report for a site visit to plan space for a new employee was discarded, and Ms. DeGroat and other staff members went to the site and made decisions without Ms. Buckanaga's input. Ms. Buckanaga alleged that Ms. DeGroat did other things to undermine her authority as well, including making comments that suggested Ms. Buckanaga did not know what she was doing during meetings.

Ms. Buckanaga went on leave on October 31, 2019, due to the exacerbation of her bipolar disorder, allegedly from "management['s] fail[ure] to cure the toxic hostile work environment." J.A. 457–58; J.A. 478. While on leave, she applied for disability retirement. On December 10, 2019, Ms. Buckanaga's medical provider extended her leave to January 31, 2020. Ms. Buckanaga made a written request to be placed on Leave Without Pay, which was denied. On December 16, 2019, Ms. DeGroat instead advised Ms. Buckanaga that she would be charged Absent Without Leave.

## II

By January 7, 2020, Ms. Buckanaga had filed an Equal Employment Opportunity (EEO) complaint that included, among other claims not relevant to this appeal, her involuntary retirement claim, which the Equal Employment Opportunity Commission (EEOC) ultimately dismissed and returned to the Department of Health and Human Services (DHHS) for a Final Agency Decision (FAD) with appeal rights to the MSPB pursuant to EEOC policy to have the MSPB determine its jurisdiction over constructive action claims before EEOC adjudication. In a June 2022 FAD, DHHS found that Ms. Buckanaga had failed to establish her claim of constructive discharge.

Ms. Buckanaga timely appealed to the MSPB. The Administrative Judge issued an acknowledgement order informing Ms. Buckanaga that the Board may not have jurisdiction over her appeal and directed her to show cause on the issue.

Following the completion of this jurisdictional briefing, the Administrative Judge issued an Initial Decision dismissing Ms. Buckanaga's MSPB appeal without a hearing, as the Administrative Judge found Ms. Buckanaga had failed to raise a non-frivolous claim of Board jurisdiction. After first determining that Ms. Buckanaga failed to raise a non-frivolous claim that her retirement was involuntary based upon agency failure to accommodate a disability, the Administrative Judge considered whether she had failed to raise a nonfrivolous claim that her resignation was involuntary based on a hostile work environment. Addressing this issue, the Administrative Judge determined that Ms. Buckanaga's "claims do not amount to nonfrivolous allegations that she was coerced into retirement due to intolerable work conditions." J.A. 19. Instead, the Administrative Judge considered most of Ms. Buckanaga's "complaints [to] relate primarily to Ms. DeGroat's management style and personality conflicts [Ms. Buckanaga] had with her," which "d[o] not rise to the level of an intolerable working condition." J.A. 20.

The Administrative Judge also determined that any alleged events that took place prior to November 2018 were "too remote in time to consider in support of [Ms. Buckanaga]'s constructive removal claim." J.A. 21; *see also* J.A. 21–22. As to the incident with the OIG inspector that took place in November 2018, the Administrative Judge determined both that "this would not have led a reasonable person to feel that there was no other alternative but to resign[, as Ms. Buckanaga] could have challenged that decision up the chain of command," and that "this incident is also too remote to give it the

consideration that [Ms. Buckanaga] believes it deserves." J.A. 22.

Additionally, the Administrative Judge (1) discredited Ms. Buckanaga's exhibits in support of her jurisdictional response, as "they shed no additional light on her alleged constructive removal claim," and (2) "did not give [] much weight" to her submission of supplemental statements.[2] J.A. 22–23.

Ultimately, the Administrative Judge determined that Ms. Buckanaga "had the option to continue at the agency and, to exercise her appeal rights in the proper forum. She had already filed an EEO complaint and could have awaited the outcome of that complaint and exercised any other available appeal rights prior to retiring." J.A. 23.

Following the initial dismissal of her claim, Ms. Buckanaga filed a petition for review with the Board. The Board issued a Final Order denying Ms. Buckanaga's petition and affirming the Administrative Judge's Initial Decision, which became the Board's final decision.

Ms. Buckanaga timely appeals. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

---

[2] The exhibits and supplemental statements attached to Ms. Buckanaga's jurisdictional response include a statement from her medical provider regarding her retirement, *see* J.A. 482; several statements from coworkers corroborating Ms. Buckanaga's allegations about the treatment she was subjected to at WEHC, *see* J.A. 483–88; a form for one of her leave requests, *see* J.A. 489–92; and several documents related to potential complaints and investigations into the supervisors and practices at WEHC, *see* J.A. 493–505.

## Discussion

We review determinations of the Board concerning its jurisdiction de novo. *Parrot v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008). We review the Board's underlying factual findings for substantial evidence. *Id.*

Although an "employee who voluntarily resigns or retires has no right to appeal to the MSPB[,] . . . [t]he MSPB possesses jurisdiction over an appeal filed by an employee who has resigned or retired if . . . his or her resignation or retirement was involuntary and thus tantamount to forced removal." *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340–41 (Fed. Cir. 2001) (citation omitted). "Resignations are presumed voluntary, and the burden of showing that the resignation was involuntary is on the petitioner." *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). An employee asserting claims of involuntary retirement on the basis that the agency coerced the employee to retire must show that "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." *Shoaf*, 260 F.3d at 1341. To objectively determine whether a reasonable person in the employee's position would have felt compelled to resign, the tribunal must consider the totality of the circumstances. *Id.* at 1342. A retirement will not be deemed involuntary where the employee retires simply because she "does not want to accept [actions] that the agency is authorized to adopt." *Terban*, 216 F.3d at 1025 (alteration in original) (quoting *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996)).

When a claimant makes a non-frivolous allegation of MSPB jurisdiction, she is entitled to a jurisdictional hearing. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322,

1344 (Fed. Cir. 2006) (en banc). Non-frivolous allegations of jurisdiction are those that, if proven, can establish jurisdiction. *Id.* Only once a claimant is at the hearing must she prove jurisdiction by a preponderance of the evidence. *Id.*; *see also Braun v. Dep't of Veterans Affs.*, 50 F.3d 1005, 1008 (Fed. Cir. 1995) ("It would be illogical to require a petitioner to prove in advance by preponderant evidence that a resignation or retirement was involuntary to secure a hearing on that very issue.").

We hold that the Board erred in its pre-hearing jurisdictional analysis. The question at this stage is whether Ms. Buckanaga has non-frivolously alleged circumstances that, if true, would cause a reasonable person in her position to feel compelled to retire. *See Braun*, 50 F.3d at 1008. In answering this question, the Administrative Judge erroneously discounted a third of Ms. Buckanaga's allegations as too remote in time, thus failing to consider the totality of the circumstances. *See* J.A. 21 ("[M]any of [Ms. Buckanaga]'s claims relate to incidents that took place too remote in time to consider in support of [her] constructive removal claim."); J.A. 22 ("Given the remoteness of these 3 incidents, I find that they do not support an inference of intolerable working conditions such that a reasonable person would have felt compelled to resign from her position."). As we have previously explained, "in measuring the voluntariness of an employee's resignation or retirement, *all* of the activities surrounding his or her resignation or retirement, even events not immediately preceding the leave of employ, *must be considered.*" *Shoaf*, 260 F.3d at 1342 (emphases added) (holding that the MSPB abused its discretion in disregarding allegations made between 1990 and 1993 when appellant retired in 1995). In failing to consider Ms. Buckanaga's allegations from more than a year prior to her application for retirement, the Administrative Judge here failed to consider the totality of the circumstances. Nor is this a situation where Ms. Buckanaga's only

allegations occurred multiple years prior with no continuing allegations leading up to her application for retirement at the end of 2019. It is a failure to consider the totality of the circumstances when the Administrative Judge dismisses these earlier occurring incidents out of hand, instead of "viewing [an appellant]'s claims collectively as a series of escalating incidents culminating in [] retirement." *Trinkl v. Merit Sys. Prot. Bd.*, 727 F. App'x 1007, 1010 (Fed. Cir. 2018).

Additionally, the Administrative Judge determined that Ms. Buckanaga's allegations "*largely* addressed the agency's management decisions." J.A. 21 (emphasis added). We agree that allegations of management decisions such as excluding Ms. Buckanaga from managerial meetings and implementing changes without her knowledge or participation cannot give rise to coercive involuntariness. *See Staats*, 99 F.3d at 1124 (explaining that the doctrine of coercive involuntariness does not apply to cases where an employee's hardship is the result of "measures that the agency is authorized to adopt"). That said, the Administrative Judge failed to account for other allegations that cannot reasonably fall into this category. For example, Ms. Buckanaga alleged that Ms. DeGroat had become hostile enough in one incident that another employee considered calling security. In another example, while Ms. Buckanaga was out on leave for mental health reasons, she alleged that Ms. DeGroat publicly disclosed to other employees that "[Ms.] Buckanaga is out on mental health leave because she can't handle her staff" or that "[Ms.] Buckanaga is having a mental breakdown and can't handle her staff. She's going to be out for two weeks." J.A. 17; J.A. 475. Additionally, while she was out on this leave, Ms. Buckanaga alleged that Ms. DeGroat required her to come into work for a training, and she was the only person in her circumstance to have to do so. If true, hostility to the point that observers thought security may need to intervene, disparagingly disclosing health records

to other employees, and selectively requiring someone to work while they are on leave for mental health reasons cannot reasonably be discounted as mere "management decisions."

Likewise, Ms. Buckanaga's allegation about an OIG investigator who was looking into claims on Ms. DeGroat's harassment of employees being turned away and OIG not being informed of this, if true, could not be considered a mere managerial decision. And although the Administrative Judge did acknowledge this report, the Administrative Judge discounted this allegation because (1) "this would not have led a reasonable person to feel that there was no other alternative but to resign," as she "could have challenged that decision up the chain of command," J.A. 22; and (2) "this incident [was] also too remote to give it the consideration that [Ms. Buckanaga] believes it deserves," *id.* We have already noted the Administrative Judge's error in discounting events she found to be too remote in time. In addition, the Administrative Judge's decision also ignores that Ms. Buckanaga allegedly did try to challenge the report, which is how she claims to know that OIG was unaware that its chosen investigator was not used.

While the Government is correct that the Administrative Judge's failure to explicitly address certain allegations does not necessarily mean that they were not considered, when the Administrative Judge rests part of her determination on the conclusion that a reasonable person could have challenged the behavior she was experiencing instead of retiring, the Administrate Judge should have considered the totality of the circumstances of the claim, including Ms. Buckanaga's allegations that her complaints concerning verbal abuse and interference with investigations were consistently ignored. Furthermore, the Government's argument that there was no pressure for Ms. Buckanaga to retire when she did, "especially considering that . . . she was already on leave at the time

she applied for disability retirement," Resp. Br. 23, ignores Ms. Buckanaga allegations that (1) Ms. DeGroat had previously ignored Ms. Buckanaga's paid leave by requiring her to work through it, and (2) Ms. Buckanaga did not have unlimited leave, paid or otherwise, and was in fact denied unpaid leave by Ms. DeGroat.

Finally, as even the Government concedes, the Administrative Judge's weighing of Ms. Buckanaga's corroborating evidence "was improper at the nonfrivolous stage." Resp. Br. 25 (citing *Dumas v. Merit Sys. Prot. Bd.*, 789 F.2d 892, 893–94 (Fed. Cir. 1986)). While this error standing alone may not have been reversible, in conjunction with the errors identified above, it adds to the implication that, although the Administrative Judge acknowledged the proper legal standard at the non-frivolous stage of the proceedings, that standard was not actually applied. Instead, the Administrative Judge considered the evidence in a piece meal fashion and held Ms. Buckanaga to an improperly high burden.

As we have determined that the Administrative Judge erred by not considering the totality of the circumstances and weighing the evidence at the non-frivolous stage, we do not reach Ms. Buckanaga's other arguments on appeal.[3]

## CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive. For the foregoing reasons, we vacate the MSPB's pre-hearing dismissal of

---

[3] To the extent the Administrative Judge considered a claim for involuntary retirement based on lack of accommodation that Ms. Buckanaga contends she never alleged, this is at most harmless error, as the Administrative Judge went on to consider anew her claim of involuntary retirement based on an intolerable or hostile work environment.

Ms. Buckanaga's claim of involuntary retirement and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs to Petitioner.